1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*E-FILED - 3/24/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GENE DANIELS,

        Plaintiff,

  vs.

WARDEN M.S. EVANS, et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

No. C 08-3780 RMW (PR)

ORDER DENYING IN PART AND
GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFF'S
CROSS-MOTION FOR SUMMARY
JUDGMENT; REFERRING CASE TO
PRO SE PRISONER SETTLEMENT
PROGRAM

      Plaintiff, a California prisoner proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 against numerous officials of Salinas Valley State Prison ("SVSP") on August 7, 2008.  Defendants move for summary judgment, arguing that there is no genuine issue of material fact and that they are entitled to the judgment as a matter of law.  Plaintiff opposed the motion and filed a cross-motion for summary judgment, and defendants filed a reply.  Having carefully considered the papers submitted, the court hereby DENIES in part and GRANTS in part defendants' motion for summary judgment, DENIES plaintiff's cross-motion for summary judgment, and refers this case to the Pro Se Prisoner Settlement Program for the reasons set out below.

///

///

Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment; Denying Plaintiff's Cross-Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Daniels780msj.wpd

# BACKGROUND[1]

Plaintiff  is an inmate with the California Department of Corrections and Rehabilitation ("CDCR").  All allegations in plaintiff's amended complaint occurred while he was incarcerated in SVSP.  On August 22, 2006, plaintiff fell into a drainage ditch at least six inches deep and covered by grass on Facility A.  (Amended Complaint ("AC") at 3-4.)  Plaintiff's right knee is permanently damaged.  (Id. at 3.)  Prolonged standing caused plaintiff's knee to pop out, which caused him pain and made it impossible to sleep.  (Id. at 4.)

On August 23, 2006, Defendant Nurse Bey ("Bey") ordered x-rays of plaintiff's foot and knee.  (Id.)  The x-ray results showed a "possible chondromalacia patella," meaning a possible meniscus tear.  (Id. and Ex. B.)  Bey examined plaintiff on two subsequent dates and told plaintiff that nothing could be done until he received an MRI.  (Id. at 4.)  On October 19, 2006, Bey ordered an MRI, which was performed on October 25, 2006.  (Id.)

On October 25, 2006, plaintiff had an MRI which revealed a fairly severe lateral meniscal tear and multiple fossa ganglion cysts.  (Id. at 4, Ex. C.)

On November 20, 2006, Bey and plaintiff discussed the MRI findings and Bey scheduled an appointment for plaintiff to see an outside orthopedic surgeon.  (Id. at 5.)  On December 7, 2006, defendant Dr. Bowman ("Bowman") also scheduled plaintiff to see an orthopedic surgeon. (Id.)  On December 22, 2006, Bey issued a referral to have plaintiff's knee examined.  (Id.)

On March 2, 2007, Bey confirmed that plaintiff's knee surgery was scheduled and on March 7, 2007, defendant Dr. Pompan ("Pompan") performed the knee surgery.  (Id. at 6.)  As post surgery protocol, Pompan prescribed two vicoden for seven days to be taken three times a day.  (Id.)

On March 8, 2007, plaintiff told Bey that the bandage on his knee was too tight, but Bey refused to loosen it.  (Id.)  On March 10, 2007, plaintiff complained to Correctional Officer Sevilla that his foot was swollen and he was in pain so Sevilla took plaintiff to the clinic.  (Id. at

---

[1] The facts stated herein are undisputed unless otherwise indicated.

Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment; Denying Plaintiff's Cross-Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Daniels780msj.wpd

7.)  At the clinic, defendant Nurse Jeans ("Jeans") interviewed plaintiff, disbelieved that he had filled out a sick-call slip, and stated, "He's bullshitting and faking his way into medical.  There's absolutely nothing wrong with him!"  (Id.)  Correctional Officer Yee told Jeans that plaintiff recently had knee surgery and that his right foot was swollen.  (Id.)  Jeans ordered plaintiff to return to the gym.  (Id.)  Plaintiff submitted another sick-call slip requesting a bandage change and medical attention, which he received on March 11, 2007.  (Id.)

On March 10, 2007, Nurse Richards failed to give plaintiff his medication at noon.  (Id. at 6.)  On March 12, 2007, Nurse Richards failed to give him his night medication.  (Id.)  Even though plaintiff's prescription was through March 19, 2007, prison officials discontinued it on March 14, 2007.  (Id.)

On March 20, 2007, Pompan prescribed Tramodol for pain and physical therapy for six weeks.  (Id. at 7-8.)  From March 20, 2007 through April 19, 2007, plaintiff asserts that he received no medication for pain.  (Id. at 8.)  Plaintiff told Nurse Richards, Nurse Lobretz, and defendant Nurse Ennis repeatedly that he was not receiving the pain medication and he was suffering as a result of it and they all expressed indifference.  (Id.)  On March 27, 2007, plaintiff told Bey that he was not receiving the medications and she said she would re-order them.  (Id.)  Finally, on April 19, 2007, after plaintiff told Bey again that it had been 29 days since he last received any pain medication, she apologized and said, "This whole thing is screwed up."  (Id. at 9.)  Defendants respond that plaintiff received continuous medication during this time period.

Plaintiff's Amended Complaint alleges that defendants were deliberately indifferent to his medical needs, in violation of the Eighth Amendment.

## DISCUSSION

A.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute

Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment; Denying Plaintiff's Cross-Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Daniels780msj.wpd

3

as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted."  Liberty Lobby, Inc., 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  Celotex Corp., 477 U.S. at 323.

At the summary judgment stage, the court  must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

2.   Analysis

Prisoners can establish an Eighth Amendment violation with respect to medical care if they can prove there has been deliberate indifference to their serious medical needs.  Estelle v.

Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements:  the seriousness of the prisoner's medical need and the nature of the defendants' response to that need.  McGuckin, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id., citing Estelle, 429 U.S. at 104.  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.  Id. at 1059-60, citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  Id.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

Once the prerequisites are met, it is up to the factfinder to determine whether deliberate indifference was exhibited by defendants.  Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care.  McGuckin, 974 F.2d at 1062 (delay of seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to present colorable § 1983 claim).

1    Plaintiff states a claim of deliberate indifference to a serious medical need.  Specifically,

2  he asserts that the delay in treating his knee and scheduling surgery caused ganglion cysts to

3  form and grow in his knee.  (AC at 5-6.)  Plaintiff also argues that from March 20, 2007 through

4  April 19, 2007, defendants refused to give him medication for his pain which caused extreme

5  suffering and pain.  (Id. at 7-9.)  Defendants argue that they are entitled to summary judgment on

6  both of these claims because (1) plaintiff has failed to establish that there was any unreasonable

7  delay in treating his knee or that the delay caused ganglion cysts to grow; and (2) plaintiff was

8  consistently given various medication from March 2006 through October 2008.  The court will

9  address each of plaintiff's claims in turn.

10                    a.        Delay in treatment

11    Defendants do not dispute that plaintiff's knee injury was a "serious medical need."

12  Thus, the question is whether there is enough evidence to support plaintiff's claim that the 6-

13  month period between the injury and the subsequent surgery caused the growth of ganglion

14  cysts.  See Shapley v. Nevada Bd. Of State Prison Commm'rs , 766 F.2d 404, 407 (9th Cir.

15  1985) ("mere delay of surgery, without more, is insufficient to state a claim of deliberate medical

16  indifference").   To show deliberate indifference to a serious medical need where there is a delay

17  in treatment or surgery, plaintiff must show that the failure to provide earlier treatment or

18  surgery was harmful.  See McGuckin, 974 F.2d at 1060.  Plaintiff does not need to show that the

19  harm was substantial, although doing so would provide additional support for the claim that the

20  defendants were "deliberately indifferent" to his medical needs.  Jett v. Penner, 439 F.3d 1091,

21  1096 (9th Cir. 2006).

22    Here, except for plaintiff's own self-serving statements, plaintiff submits no evidence of

23  what caused ganglion cysts to grow in his knee.  He asserts that the delay in surgery caused the

24  cysts to grow and created a more serious medical condition.  (AC at 4-5; Pl. Opp. at 6.)  A

25  review of plaintiff's submitted documentary evidence however reveals no mention of ganglion

26  cysts outside of the August 28, 2006 MRI results.  (AC, Ex. C).  Those MRI findings merely

27  stated that multiple fossa ganglion cysts and a meniscal tear were discovered.  Plaintiff does not

28

Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment; Denying Plaintiff's Cross-
Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Daniels780msj.wpd
6

1   point to, and the court has not found, any other evidence that suggests the cysts were a result of

2   any delay in treatment.  Cf. Jett, 439 F.3d at 1097-98 (reversing grant of summary judgment

3   where inmate fractured his thumb, was not taken to a specialist to set it for six months, resulting

4   in the fracture to heal improperly).

5          In addition, taking all facts in the light most favorable to plaintiff, defendants' actions do

6   not demonstrate indifference with respect to the 6-month period between plaintiff's injury and

7   subsequent surgery.  In plaintiff's own words, immediately after his injury, Bey ordered x-rays.

8   (AC at 4.)  Five days later, plaintiff's foot and knee were x-rayed.  (Id.)  Almost two months

9   thereafter, Bey ordered an MRI.  (Id.)  Plaintiff states that Bey informed him nothing else could

10  be done until the plaintiff received his MRI, and plaintiff insinuates that Bey could and should

11  have ordered the MRI earlier.  (Id.)  Once the MRI results were returned, Bey scheduled plaintiff

12  for a consultation with an orthopedic surgeon to discuss options.  (AC at 5.)  Approximately

13  three weeks later, plaintiff saw Dr. Bowman who also scheduled plaintiff to see an orthopedic

14  surgeon.  (Id.)  Less than one month later, Pompan, the orthopedic surgeon, attended to plaintiff

15  and scheduled him for knee surgery.  (Id.)  Plaintiff asserts that Bey, Bowman, and Pompan

16  knew that plaintiff was in pain from his knee injury and did nothing.

17         However, the record is devoid of evidence from which it can be inferred that Bey,

18  Bowman, or Pompan purposefully ignored or failed to respond to plaintiff's pain.  See

19  McGuckin, 974 F.2d at 1060.  Rather, plaintiff's implication is more akin to a difference of

20  medical opinion regarding when tests and surgery should occur.  See Toguchi v. Chung, 291

21  F.3d 1051, 1058 (9th Cir. 2004).  Plaintiff does not demonstrate that any decision was

22  purposefully made to wait two months before ordering the MRI or that any decision in

23  scheduling his appointment with an orthopedic specialist was "medically unacceptable under the

24  circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's

25  health."  Id. (Internal quotations omitted.)  Importantly, plaintiff's medical records demonstrate

26  that he was prescribed a 30-day supply of pain medication immediately after his injury (MSJ,

27

28

Decl. Joaquin at ¶ 18; Ex. A at 33, 78), and a 180-day supply of pain medication on the day Bey ordered his MRI (Id., Decl. Joaquin at ¶ 18; Ex. A at 32, 77).

Moreover, even assuming that ganglion cysts did form and grow during the period between August 22, 2006, the date of the injury, and March 7, 2007, the date of surgery, plaintiff does not allege that any defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," or that he or she "[drew] the inference." Farmer, 511 U.S. at 837. Even if a defendant should have been aware of the risk, but was not, then the defendant has not violated the Eighth Amendment, no matter how severe the risk. Gibson, 290 F.3d at 1188.

Plaintiff has not submitted any evidence to the court indicating that the alleged 6-month delay in receiving knee surgery exacerbated his alleged injuries or caused him further harm. See McGuckin, 974 F.2d at 1059. Cf. Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion."); Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996) (prisoner who complains that delay in medical treatment rose to the level of a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment in order to succeed). Nor has plaintiff submitted any evidence demonstrating that defendants' actions or inactions created a risk of serious harm to plaintiff's health or that it was medically unacceptable under the circumstances. Plaintiff has submitted no evidence to indicate that he needed emergency medical attention or medical care sooner than he received it.

Similarly, to the extent plaintiff raises a separate but related claim against defendant Nurse Jeans for allegedly disbelieving that plaintiff's foot was swollen and returning him to the gym without examination, the court concludes that there is no genuine dispute as to a material fact for trial. A claim that rises to mere medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. See Toguchi, 391 F.3d at 1060-61. To determine deliberate indifference, there must be substantial indifference in each individual case

that indicates more than "mere negligence or isolated occurrences of neglect." <u>Wood</u>, 900 F.2d
at 1334, <u>citing</u> <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1111 (9th Cir. 1986), <u>abrogated on other
grounds by</u> <u>Sandin v. Connor</u>, 515 U.S. 472 (1995).

     In <u>Wood</u>, an inmate filed a civil rights action alleging that two months before he was
admitted to state prison, he injured his shoulder in a fight. <u>Wood</u>, 900 F.2d at 1333. A doctor
treated the shoulder by placing two pins into the shoulder and prescribed a sling so the arm
would be immobilized and prevent the pins from coming out. <u>Id.</u> When Wood entered state
prison, a prison guard confiscated the sling because the guard believed it was a security threat
and the guard did not have Wood's medical file. <u>Id.</u> A few days later, one of the pins in Wood's
shoulder broke and he experienced pain. <u>Id.</u> Wood immediately complained but didn't see the
prison doctor until a few days thereafter who prescribed medication for inflammation and pain
and recommended a referral to an outside specialist. <u>Id.</u> Over a month later, Wood saw the
specialist, who removed the pin. <u>Id.</u> at 1334.

     The Ninth Circuit concluded that although the prison officials' conduct was not
excusable, it did not amount to deliberate indifference. <u>Id.</u> "Although Wood's treatment was not
as prompt or efficient as a free citizen might hope to receive, Wood was given medical care at
the prison that addressed his needs." <u>Id.</u> The Court indicated that Wood did not demonstrate
that the delay in treatment caused him harm, given the seriousness of the injury and the treatment
actually received. <u>Id.</u> at 1335.

     Similarly here, plaintiff claimed that the bandage on his knee was too tight and felt that
his foot was swollen. Jeans' belief that plaintiff did not submit a sick-call form and subsequent
disbelief of plaintiff's ailment, while rude and inexcusable, appears to be an isolated incident.
<u>See</u> <u>id.</u> at 1334. In addition, plaintiff was seen by medical staff the following day. (AC at 7.)
Plaintiff is silent as to the outcome of that medical visit and does not assert that he was not
treated or that his complaint was not properly handled. <u>See</u> <u>id.</u> at 1334-1335. In other words,
taking all facts in the light most favorable to plaintiff, Jeans' conduct did not rise to the level of
deliberate indifference.

Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment; Denying Plaintiff's Cross-
Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Daniels780msj.wpd
9

1    Accordingly, defendants' motion for summary judgment as to this portion of the claim is

2    GRANTED and plaintiff's cross-motion is DENIED.

3        b.    Refusal to give medication

4    Plaintiff's second argument is that defendant Nurse Ennis[2] was deliberately indifferent to

5    his repeated claims that he was not receiving his prescribed medication between March 20, 2007

6    through April 19, 2007.  Defendants respond that plaintiff was prescribed and received

7    continuous pain medication from March 2006 through October 2008.

8    Plaintiff claims that beginning on March 27, 2007, one week after Dr. Pompan prescribed

9    him Tramadol for pain, he repeatedly informed Nurse Ennis that he was not receiving his

10   medication and that he was in extreme pain.  (AC at 7-8.)  Defendants submit medical records

11   that demonstrate that plaintiff was given a prescription for pain medication post-surgery on

12   March 8, 2007, and a 100-day prescription for pain medication on April 19, 2007.  (MSJ Decl.

13   Joaquin at 3, ¶ 18.)  Defendants also assert that pain medication was administered to plaintiff

14   "through March of 2007" and "through April of 2007.  (Id. at ¶ 19.)  However, a review of the

15   cited medical record pages are irrelevant or inconclusive to the plaintiff's state time period.  At

16   the very least, it is clear that there is a genuine issue of material fact as to whether plaintiff

17   received the pain medication from March 20, 2007 through April 19, 2007 and whether Ennis

18   was deliberately indifferent to plaintiff's medical needs by refusing him medication.

19   Thus, viewing the facts in the light most favorable to the plaintiff, the court finds that

20   there is a genuine issue of material facts.  Plaintiff's allegation that defendant Ennis was

21   deliberately indifferent to his medical needs has stated an Eighth Amendment claim sufficient to

22   survive summary judgment.  Defendants' motion for summary judgment as to this claim is

23   DENIED and plaintiff's cross motion for summary judgment is DENIED.

24   ///

25

26   _____

27   [2] Plaintiff includes Nurse Lobretz and Nurse Richards in these allegations, however, on December 8, 2009, the court dismissed Lobretz and Richards pursuant to Federal Rule of Civil Procedure 4(m).  Accordingly, Lobretz and Richards are no longer defendants in this matter and the court will not include allegations against them in this order.

28

1

2

C.    Remaining defendants

"'A person deprives another of a constitutional right, within the meaning of section 1983,

3    if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act

4    which he is legally required to do that causes the deprivation of which [the plaintiff

5    complains].'" Redman v. County of San Diego, 942 F.2d 1435, 1439-40 (9th Cir. 1991) (en

6    banc), quoting Leer, 844 F.2d 628, 633 (9th Cir. 1988) (other internal quotation marks omitted).

7           The Ninth Circuit explained that to recover damages against a defendant prison official in

8    an Eighth Amendment claim, the plaintiff must prove "(1) that the specific prison official, in

9    acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment and

10   (2) that this indifference was the actual and proximate cause of the deprivation of the [plaintiff's]

11   eighth amendment right[s]. . . ." Id. at 634 (citations omitted). The causation inquiry focuses on

12   "whether the individual defendant was in a position to take steps to avert" the harm to the

13   plaintiff, as well as what "the duties, discretion, and means of each defendant" were at the time.

14   Id. at 633-34.

15          The Ninth Circuit has affirmed summary judgment for defendants where there was little

16   evidence that the individual either had knowledge of the constitutional violation or the individual

17   was not responsible for it.  Compare Anthony v. Dowdle, 853 F.2d 741, 743 (9th Cir. 1998)

18   (affirming summary judgment for warden who knew inmate was injured, was not aware of the

19   seriousness of his injuries, and referred him to medical services); Ortiz v. City of Imperial, 884

20   F.2d 1312, 1314 (9th Cir. 1989) (affirming summary judgment for individuals with little contact

21   with the inmate but reversing it for medical staff aware of inmate's head injury that led to his

22   death), with Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (finding summary judgment

23   not appropriate for officers who were aware pepper spray did not dissipate and affected

24   bystander inmates).

25          Here, plaintiff does not establish that the remaining individual defendants were aware

26   that plaintiff was not receiving his prescribed medication.  The record does not show that they

27

28

Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment; Denying Plaintiff's Cross-
Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Daniels780msj.wpd

1  played any part in the denial of medication.  Accordingly, plaintiff has failed to show that the
2  remaining defendants were the proximate cause of any constitutional violation.

3      Further, "A supervisor is only liable for constitutional violations of his subordinates if the
4  supervisor participated in or directed the violations, or knew of the violations and failed to act to
5  prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Evidence that a prison
6  supervisor was personally involved in an unconstitutional transfer and denied all appeals of the
7  transfer, for example, may suffice, see Hamilton v. Endell, 981 F.2d 1062, 1067 (9th Cir. 1992),
8  as may evidence that a supervisor implemented "a policy so deficient that the policy itself is a
9  repudiation of constitutional rights and is the moving force of the constitutional violation."
10  Redman, 942 F.2d at 1446.  Under no circumstances is there respondeat superior liability under
11  section 1983, i.e., there is no liability under section 1983 solely because one is responsible for
12  the actions or omissions of another.  See Taylor, 880 F.2d at 1045.

13      Plaintiff has failed to offer any evidence that the remaining defendants participated in the
14  denial of medication or were aware of the refusal to give medication between March 20, 2007
15  and April 19, 2007.  Likewise, plaintiff has failed to offer any evidence that these defendants
16  implemented a policy of denying and delaying care for the type of injuries plaintiff has
17  sustained.      Thus, plaintiff has failed to raise an issue of deliberate indifference on the part of
18  the remaining defendants: Evans, Lee, Bey, Pompan, Jeans, and Bowman, and they are entitled
19  to summary judgment on this claim.  These defendants' motion for summary judgment is
20  GRANTED.

21  D.   Referral to Pro Se Prisoner Settlement Program

22      Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff
23  for that purpose, the court finds good cause to refer this matter to Judge Vadas pursuant to the
24  Pro Se Prisoner Settlement Program for settlement proceedings on the claims set forth above.
25  The proceedings will consist of one or more conferences as determined by Judge Vadas.  The
26  conferences shall be conducted with defendant Ennis, or the representative for defendant Ennis,
27  attending by videoconferencing if they so choose.  If these settlement proceedings do not resolve

28

1  this matter, the court will then set this matter for trial and consider a motion from plaintiff for

2  appointment of counsel.

3                                              **CONCLUSION**

4          1.      Defendants' motion for summary judgment (docket no. 50) is DENIED

5  in part and GRANTED in part.  The motion is granted as to all claims against defendants Evans,

6  Lee, Bey, Pompan, Jeans, and Bowman.  Plaintiff has set forth a genuine triable issue as to

7  whether defendant Ennis acted with deliberate indifference in failing to administer medication

8  for plaintiff's pain from his knee surgery from March 20, 2007 through April 19, 2007.

9          2.      Plaintiff's cross-motion for summary judgment (docket no. 61) is DENIED.

10         3.      The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner

11  Settlement Program for settlement proceedings on the remaining claims in this action, as

12  described above.  The proceedings shall take place within **ninety (90) days** of the filing date of

13  this order.  Judge Vadas shall coordinate a time and date for a settlement conference with all

14  interested parties or their representatives and, within **ten (10) days** after the conclusion of the

15  settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

16  If these settlement proceedings to do not resolve this matter, plaintiff can file a renewed motion

17  for appointment of counsel and the court will then set this matter for trial.

18         4.      The clerk of the court shall mail a copy of the court file, including a copy of

19  this order, to Judge Vadas in Eureka, California.

20         5.      The instant case is STAYED pending the settlement conference proceedings.

21         This order terminates docket numbers 50 and 61.

22         IT IS SO ORDERED.

23  DATED: __3/23/10_____

                                              *Ronald M. Whyte*
24
                                              RONALD M. WHYTE
                                              United States District Judge
25

26

27

28